**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

THE CLOISTER EAST, INC. d/b/a CLOISTER CAFÉ

                                 Plaintiff,

      v.

THE NEW YORK STATE LIQUOR AUTHORITY

                                 Defendant.

**Civil Action No.:** 1:20-cv-6545

**COMPLAINT**

---

Plaintiff, The Cloister East, Inc. d/b/a Cloister Café ("Plaintiff" or "Cloister Café"), by and through its undersigned attorneys, Garson, Ségal, Steinmetz, Fladgate LLP, brings its Complaint against Defendant, the New York State Liquor Authority. ("Defendant" or the "SLA"), and respectfully alleges as follows:

### THE PARTIES

1.     Plaintiff, The Cloister East, Inc., d/b/a Cloister Café is a restaurant hospitality company with offices at 238 East 9th Street, New York, New York 10003.

2.     Defendant, the New York State Liquor Authority is a government agency of the State of New York established as part of New York's Alcoholic Beverage Control Law.

### NATURE OF THE ACTION

3.     This seeks declaratory relief, injunctive relieve, damages, and attorneys fees under federal law, pursuant to 42 U.S.C. §1983, for acts in violation of Plaintiff's rights under the Fourteenth Amendment of the United States Constitution.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331.  Venue in this District is predicated on 28 U.S.C. §1391(b) in which the property that is the subject of the action was being used prior to being taken.

5.      Venue is proper in this judicial district pursuant to 27 U.S.C. §1391(a), in that it is a district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property that is the subject of this action is situated.

6.      Further, the agreement from which this dispute arises designates that it is governed and constructed in accordance with the laws of the State of New York and that any action brought by either party against the other must be brought in state or federal courts of New York, Kings County. *See* Ex. A, §8(a).

**FACTS COMMON TO ALL CLAIMS**

7.      For over thirty years, Plaintiff has owned and operated a restaurant space in the premises located at 238 East 9th Street, New York, New York 10003.

8.      The Cloister Café is a well-known-themed longstanding East Village restaurant which also has an outside dining area.

9.      The Cloister Café is also developing a street-dining concept called Café Tucano as part of the new Street-side Phase 2 NYC Open Restaurants Program.

10.      In accordance with the New York Department of Transport guidelines that street dining must be "attractive installations that enhance neighborhood streets and provide an amenity to support walking and vibrant street life," Cloister Café hired a talented artist to create a 12 Foot Café Tucano mural in anticipation of opening the street-dining concept.

11.     At all relevant times, Cloister Café has held a valid On-Premise Liquor license issued by the SLA.

12.     Cloister Café is a reservation only restaurant with only a few tables and requires a liquor license in order to attract sufficient customers to maintain its business.

13.     Cloister Café consists of four spaces according to the New York Department of Buildings (the "DOB"): a cellar, an indoor restaurant space, a back patio outdoor space, and a courtyard.

14.     The back patio and courtyard, although abutting and adjoining, are identified by the DOB as two separate outdoor spaces.

15.     The maximum occupancy for the indoor space is 62 people.

16.     The maximum occupancy for the outdoor back patio is 74 people.

17.     The maximum occupancy for the courtyard is 60.

18.     As the outdoor spaces are adjoining, then, the maximum capacity of the outdoor space is 134 people.

19.     By architectural, DOB, FDNY guidelines, and SLA definitions, both the patio and courtyard are outdoor spaces, open to the sky with two sides each being open-air.  The patio contained a DOB approved cloth canopy for protection from the elements supported by a metal frame.

20.     Prior to re-opening following city-wide closures due to COVID-19, management of Cloister Café took numerous steps to ensure the safety of its patrons as it planned to use the outdoor spaces.

21.     In addition to following government directives relating to table spacing, mask distribution, social distancing, Cloister Café installed equipment to further increase airflow and circulation, including multiple exhaust and ventilation systems with filters.

22.     On or about July 11, 2020, following the New York City guidelines for "Phase 2" reopening, Cloister Café implemented the required policies and reopened its outdoor spaces.

23.     Between July 11, 2020 and August 1, 2020, the New York Sheriff's Office, the office tasked with checking for Covid-19 compliance, came to Cloister Café on two (2) occasions and found both times that Cloister Café was in full compliance with the guidelines.

24.     On or about August 4, 2020, an article was published on Gothamist.com, alleging that Cloister Café was hosting "illegal, illicit pandemic parties" and making numerous uninvestigated and uninformed statements based on a sole Instagram post from one @kristinaformayor, identified as Kristina Alaniesse (the "Gothamist Article" and "Alaniesse").

25.     Seemingly, having read the Gothamist Article, the New York Sheriff's Office, despite having recorded no such illicit conduct in its two prior site visits, allegedly provided Defendant with "social media" showing dancing, no social distancing, and partying.

26.     At  11:15 pm on August 6, 2020, a COVID task force arrived at Cloister Café and inspected the operation, finding no violations not threat to public health.

27.     At 12:20 am on August 7, 2020, an SLA investigator arrived at Cloister Café and inspected the operation.

28.     Upon information and belief, unaware of the DOB law,  the investigator mistook the canvas covering as a ceiling and failed to notice that there were only two walls.

29.     The investigator questioned Nick Drobenko, the owner of Cloister Café, on several topics, none relating to COVID-19 enforcement.

30.     Mr. Drobenko fully cooperated, provided the required affidavits, and ultimately closed the establishment at the request of the SLA investigator.

31.     The same night, without any notice to Cloister Café, the SLA held a Special Full Board Meeting via video conference to vote on whether to suspend Cloister Café's liquor license.

32.     Upon information and belief the proceedings lack any form of procedural due process.

33.     According to the SLA counsel prosecuting ("SLA Counsel"), the investigation was prompted based on information having been received by the Sheriff's Office that "illegal parties – pandemic parties" were being held at Cloister Café.

34.     Given this verbiage, language contained in the headline of the Gothamist Article – and the timing of the investigation, three (3) days after publication of the Gothamist Article, it is clear that the Gothamist Article prompted the investigation.

35.     SLA Counsel stated the Sheriff's Office "showed the investigator social media . . . of a party with people dancing, standing shoulder to shoulder."

36.     Upon information and belief, the social media was from Alaniesse's post.

37.     SLA Counsel stated that the investigator arrived to find ten (10) people waiting outside to get in, but also that "apparently, they got wind of the fact that the Sheriff was on his way, so people sort of disappeared."

38.     The relevance of the statement is questionable, as people waiting outside would be required, advisable and lawful if the space was deemed to be approaching capacity.

39.     No evidence was presented supporting the statement that people disappeared.

40.     SLA Counsel used hyperbole stating that continues that the investigator was compelled to gained entry.

41.     Upon information and belief, the investigator was let in and simply walked through the interior space, observing no patrons gathering inside, as Cloister Café would not allow it.

42.     SLA Counsel again used hyperbole calling the rear outside dining space a "secret backyard."

43.     Upon information and belief, this language was designed to mirror the language used by Alaniesse and the Gothamist Article.

44.     SLA Counsel incorrectly and without reasonable investigation stated that there was "an illegal structure that was really three walls of neighboring buildings with a ceiling on top."

45.     The SLA Counsel failed to inform the Board that the "ceiling" allegedly seen by the investigator is a cloth awning over a metal frame.

46.     The SLA Counsel failed to inform the Board that there are only two walls of neighboring buildings.

47.     The SLA Counsel failed to inform the Board that one side of the rear yard is open to the courtyard and the other side is an open-air half-wall.

48.     the side not open to the courtyard is a half-wall with the upper half open for air flow.

49.     The New York Department of Health Guidelines, which state "[f]or the purposes of this guidance, 'outdoor space' is defined as an open-air space designated for the consumption of food and/or beverage, which may have a temporary or fixed cover (e.g. awning or roof) so long as such cover has at least two sides open for airflow."

50.     The SLA Counsel failed to inform the Board that the "Ceiling" was not in fact, a ceiling, but a lawful fabric covering, and the outside space was lawful according to the New York Department of Health Guidelines.

51.     The SLA Counsel failed to inform the Board that it is clear from the Certificate of Occupancy that the space is considered an outdoor space, as it is designated as "OS P.".

52.     SLA Counsel informed the Board that the investigator saw remnants of food, but no one eating.

53.     SLA Counsel failed to inform the Board the time period and the circumstances of such observations.

54.     SLA Counsel informed the Board that the investigator reviewed the food receipts but found them to be suspicious since all of the items per table were not split by patron.

55.     SLA Counsel failed to inform the Board that the practice of one table, one receipt is regular and is not a reasonable source of suspicion.

56.     While SLA Counsel informed the Board that there was food in the kitchen and the kitchen was operational, she failed to correct a clear error of a commissioner who stated that there was no food.

57.     SLA Counsel incorrectly informed the Board that Cloister Café's  Public Assembly permit was expired.

58.     SLA Counsel failed to inform the Board that upon being questioned Mr. Drobenko explained that he did not have the display form because they were not being printed due to COVID-19.

59.     SLA Counsel failed to inform the Board that Mr. Drobenko showed the investigator the receipt showing that the Public Assembly permit had been renewed . These facts were ignored by the Board.

60.     SLA Counsel states that there was a "rolled down gate" that made the environment dangerous.

61.     SLA Counsel failed to inform the Board that a television crew from "Inside Edition" accompanied the investigator to the premises.

62.     SLA Counsel failed to inform the Board the gate was rolled down gate to preclude the bright camera lights from media from causing a hazard.

63.     SLA Counsel failed to inform the Board that there were two (2) FDNY certified fire guards on staff that also manned the roll down gate.

64.     SLA Counsel failed to inform the Board that Cloister Café had a valid Hookah Establishment license.

65.     In breach of Plaintiff's due process rights,  SLA Counsel submitted the Gothamist Article to the Board.

66.      In breach of Plaintiff's due process rights,  SLA Counsel commented upon and gave credence to the Gothamist Article.

67.     Upon information and belief, the Board was well aware that the Gothamist Article was more prejudicial than probative.

68.     SLA Counsel's statement that the Gothamist Article should not be relied upon was insufficient to cure the harm to Plaintiff's due process rights.

69.     SLA Counsel  wrongly informed the Board that  the Gothamist Article " mentions the fact that there's some talk that this might be a pop-up party promoted by Provocateur that we've previously prosecuted many times."

70.     SLA Counsel has no information other than the Gothamist Article to corroborate such a claim.

71.     Without any corroborative evidence SLA Counsel submitted opinion as fact in stating that she thought Mr. Drobenko was just sorry that he got caught.

72.     Without any corroborative evidence, SLA counsel  submitted to the Board "from this article in the Gothamist, it seems they are trying to carry on this pop-up business."

73.     SLA Counsel submitted irrelevant allegations to the Board.

74.     SLA Counsel submitted prejudicial allegations to the Board.

75.     SLA Counsel failed to submit relevant allegations to the Board.

76.     The Board placed reliance upon the irrelevant and prejudicial allegations submitted by SLA Counsel.

77.     The Board placed reliance upon the erroneous conclusions of law submitted by SLA Counsel.

78.     The Board placed reliance upon the pictures and statements in the  Gothamist Article in arriving at its decision.

79.     The Board incorrectly held that no food was being served.

80.     The Board incorrectly held that the outside area was enclosed.

81.     Chairman Bradley openly stated at he would recommend that Cloister Café should not get its license back.

82.     Upon information and belief, Chairman Bradley sought to exert his opinion upon the Board.

83.     Upon information and belief, such an opinion was biased and prejudicial.

84.     In its Notice of Pleading, the Board has not charged Cloister Café with operating an enclosed structure.

85.     In its Notice of pleading the Board has not charged Cloister Café with failing to serve food.

86.     Upon information and belief, the bases for emergency revocation of the license did not exist.

## COUNT ONE: DUE PROCESS

87.     Plaintiff incorporates by reference Paragraphs 1 through 85 as if fully set forth herein.

88.     Plaintiff's liquor license was a valid property right, subject to the protections of the Fourteenth Amendment of the United States Constitution.

89.     Without procedural or substantive due process, the New York State Liquor Authority deprived Plaintiff of its property right.

90.     As a result of Defendant's actions, Plaintiff will suffer irreparable harm, as well as significant financial harm.

91.     As a result of Defendant's actions, Plaintiff is unable to operate as a business, and thus, its owners and employees are unable to pursue their livelihoods.

92.     As a result of Defendant's actions, Plaintiff was not afforded notice and opportunity for a hearing before its right to operate was terminated.

93.     As a result of Defendant's actions, Plaintiff was not afforded a meaningful and appropriate hearing.

### COUNT TWO: EQUAL PROTECTION

94.     Plaintiff incorporates by reference Paragraphs 1 through 92 as if fully set forth herein.

95.     Plaintiff, by virtue of the SLA's reliance on a third-party publication over facts discovered by means of its own investigation, has been treated arbitrarily unequally in comparison with those establishments given fair hearings based on real evidence.

96.     As a result of Defendant's actions, Plaintiff will suffer irreparable harm, as well as significant financial harm.

97.     As a result of Defendant's actions, Plaintiff is unable to operate as a business, and thus, its owners and employees are unable to pursue their livelihoods.

98.     As a result of Defendant's actions, Plaintiff was not afforded notice and opportunity for a hearing before its right to operate was terminated.

99.     As a result of Defendant's actions, Plaintiff was not afforded a meaningful and appropriate hearing.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Cloister East, Inc., seeks judgment against Defendant, the New York State Liquor Authority, as follows:

      i.        A declaration by this Court that Plaintiff's right to due process and equal protection under the United States Constitution have been violated;

      ii.       A temporary and permanent injunction staying the suspension of Plaintiff's liquor license pending a fair and appropriate hearing that meets the requirements of the United States Constitution;

      iii.     Compensatory damages for all lost income as a result of Defendant's conduct;

      iv.     An award of reasonable attorney's fees and costs incurred in this action; and,

      v.      Any such further relief this Court deems just.


**Dated:**      New York, New York
                August 17, 2020

                                      **Respectfully Submitted**

                                      **Garson, Segal,**
                                      **Steinmetz, Fladgate LLP**
                                      *Attorneys for Plaintiff*

                        **By:**         _____

                                      Robert Garson
                                      Kevin Kehrli
                                      164 West 25th Street
                                      Suite 11R
                                      New York, NY 10001
                                      Telephone: (212) 380-3623
                                      Facsimile: (347) 537-4540
                                      Email: RG@GS2Law.com
                                              KK@GS2Law.com