UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

| | |
|---|---|
| THE CLOISTER EAST, INC. D/B/A CLOISTER CAFÉ, DROBENKO BROS REALTY INC., JAROSLAW DOBENKO, NICHOLAS DROBENKO, JOHN DROBENKO, WALTER DROBENKO, | Case No. 20 Civ. 6545 (LAK) <br><br> **DECLARATION OF MARK D. FRERRING** |

Plaintiffs,

-against-

THE NEW YORK STATE LIQUOR
AUTHORITY, VINCENT BRADLEY, as
chairman, New York State Liquor Authority;
LILY FAN, as commissioner, New York State
Liquor Authority; GREELY FORD, as
commissioner, New York State Liquor Authority;
GARY MEYERHOFF, as general counsel,
New York State Liquor Authority; MARGARITA
MARSICO, as associate counsel New York State
Liquor Authority; THOMAS DONOHUE, as
Secretary to the Authority, New York State Liquor
Authority; CHARLES STRAVALLE, as
Investigator, New York State Liquor Authority
Each sued in their individual capacities.

Defendants.
------------------------------------------------------------------X

  Mark D. Frering, declares under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to best of my knowledge:

  1. I am an Associate General Counsel employed in the Office of Gary Meyerhoff, General Counsel to the New York State Liquor Authority ("Authority" or "NYSLA") and make this declaration in support of Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction.

  2. I have served as an Associate General Counsel with NYSLA since 2015, and before that as Senior Attorney since 2007.

## Background

3. On March 7, 2020, in order to combat the burgeoning COVID-19 pandemic, pursuant to New York State Executive Law § 29, Governor Cuomo issued Executive Order ("EO") 202, implementing the State Comprehensive Emergency Management Plan and declaring a statewide disaster emergency until September 7, 2020. By Executive Order No. 202, the Governor suspended all state and local laws, rules, and regulations to the extent necessary to cope with the COVID-19 disaster emergency. Following the issuance of EO 202, Governor Cuomo issued several supplemental EOs, continuing the temporary suspension and modification of certain laws relating to the state of emergency.

4. Of significance to this case, on March 16, 2020, Governor Cuomo issued EO 202.3, stating, "Any restaurant or bar in the state of New York shall cease serving patrons food or beverage on-premises effective at 8 pm on March 16, 2020, and until further notice shall only serve food or beverage for off-premises consumption." This Executive Order authorized these "on-premises consumption" establishments to sell alcoholic beverages for takeout and delivery, a new privilege ordinarily reserved for liquor stores and grocery stores, subject to reasonable NYSLA guidance.

5. As part of the "New York State on PAUSE" initiative, Governor Cuomo signed numerous additional Executive Orders to allow for a phased reopening of businesses in various industries across the state. One of these initiatives was to allow restaurants to serve patrons on-premises, but only "in outside space, provided such restaurant or bar is in compliance with the Department of Health's guidance promulgated for such activity." EO 202.38, signed on June 6, 2020.

6. The DOH guidance, followed by NYSLA and cross-linked on NSYSLA's website, defines "outdoor space" as "open-air space designated for the consumption of food and/or beverage, which may have a temporary or fixed cover (e.g. awning or roof) so long as such cover has at least two open sides for airflow." Service outside also require that "outdoor seating for customers are

separated by a minimum of six feet in all directions," and "individuals seated at a table must be members of the same party." See https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/OutdoorTakeoutDeliveryFoodServicesMasterGuidance.pdf

7. It soon became clear that the restrictions on service described herein were not being followed, with crowds congregating in front of restaurants and bars to drink alcohol in dangerous conditions. Restaurant owners were claiming that once they sold alcohol to their patrons "to go," it was not their responsibility to tell them where to drink. In response, on June 18, 2020, Governor Cuomo issued EO 202.43. This Executive Order imposed an obligation on restaurants and bar/taverns to "inspect, monitor, and otherwise supervise the area within 100 feet of the licensed premise" to ensure that persons were not congregating and to "discontinue such sale/service of alcoholic beverages unless and until" there was compliance with the Executive Orders and DOH and NYSLA guidance.

8. As time passed, New York State witnessed widespread flare-ups of positive tests, hospitalizations, and deaths attributable to the COVID-19 pandemic in an overwhelming majority of states across the country, traced to inside service at bars. Governor Cuomo issued an additional order, EO 202.52, aimed at protecting the public facing similar flare-ups. EO 202.52 clarified that the purpose in allowing on-premises service for restaurants was to allow patrons to dine, with accompanying drinking, and not to allow the recreating of bar-type scenes at those establishments and, thus, allowed the sale of alcohol only with food.

9. Governor Cuomo also announced that while indoor service (at 50% capacity) had been permitted to commence inside in the rest of the state, the conditions observed across the country led him to decline to allow restaurants and bar/taverns in New York City to begin service inside as

well. As a result, no inside service in restaurants or bar/taverns has been permitted in New York City since EO 202.3 was signed on March 16, 2020.

10. Based on what we have witnessed as NYSLA, which has been closely monitoring compliance of its licensees and enforcing the law where there is non-compliance, the overwhelming majority of restaurants and bar/taverns in New York City adhere to the Executive Orders and the SLA's associated Guidance.

11. Due to the current crisis, the SLA's traditional role in enforcing and administering the functions delineated by New York State's Alcohol Beverage Control Law (CITE), has expanded. The SLA currently has been entrusted with enforcing the Executive Orders designed to allow the limited reopening of restaurants and bars in a way that seeks to manage the grave, current public health crisis, and help to stave off the resurgence of COVID-19 through overcrowded and unsafe venues.

**THE AUTHORITY'S ENFORCEMENT FRAMEWORK**

12. When the SLA conducts an investigation of a licensed premises and finds egregious violations which constitute an immediate danger existing to the public health, safety, and welfare, those findings are presented to the SLA board of commissioners (the "SLA Board") in an *ex parte* public meeting. While the SLA Board meets regularly (usually every two weeks), such meetings are often called on an emergency basis solely to address a request from SLA Counsel for immediate action.

13. If the SLA Board finds that the evidence presented supports a finding that the danger presented by those violations requires emergency action, it may issue an Emergency Order of Summary Suspension ("Suspension Order") of the offending party's liquor license pursuant to SAPA § 401(3).

14. Once a Suspension Order is issued, it is served on the licensee and posted on the premises and the SLA retrieves the license.

15. A Suspension Order is a provisional remedy designed to protect the public health, welfare and safety until a hearing on the disciplinary charges can be held.

16. The SLA's license suspension/revocation process is initiated by the preparation and service of a Notice of Pleading. 9 NYCRR Part 54. This document is either included and served with the Suspension Order or it is sent promptly by mail pursuant to the Rules of the State Liquor Authority. 9 NYCRR § 54.1.

17. The Notice of Pleading enumerates violations of which the licensee is accused and the potential penalties, as well as setting forth an outside date by which the licensee must respond by either pleading not guilty and demanding a hearing, no contest, or conditional no-contest. 9 NYCRR § 54.1.

18. Generally, cases that lead to summary suspensions include egregious conduct that would be difficult to defend at a hearing. Most are not disputed by the licensee. They usually contact SLA Counsel's office and seek to offer a "Conditional No Contest" plea to the SLA's Full Board – pay a fine and show corrections – and ask the Full Board to give them another chance to get their license back.

19. If the licensee requests a hearing, one is held expeditiously. In my experience, where lawyers ask for a prompt hearing to be scheduled, it is the SLA's practice to give them one within a week or two.

20. For example, the licensee Angels of the World, Inc. (Queens OP 1292322) was suspended on January 23, 2019, and had its hearing *completed* within a week. Mazi Nightclub, Inc. (Queens CR 1285164) was suspended on September 12, 2019 and its hearing commenced on September 25, 2019.

21. These examples are typical.

22. A hearing for a disciplinary case based on Executive Order violations is likely to be completed in one or two days of hearings, barring any delay by the licensee.

23. During a hearing, the licensee or its representative may present witnesses and evidence and cross-examine NYSLA's witnesses. 9 NYCRR § 54.4.

24. Following the presentations of the parties' cases, the presiding Administrative Law Judge makes findings and reports them to the SLA Board. 9 NYCRR § 54.4.

25. The Board thereafter holds a public meeting at which its three members vote on whether to accept or rejects the ALJ's findings. If charges are sustained, the SLA Board then votes on appropriate discipline for the sustained charges. 9 NYCRR § 54.6; ABCL § 119.

26. In a case where a Suspension Order is in place and a prompt hearing has been held, it is the agency's practice to expedite the ALJ's report and put the matter on the SLA Board's calendar as soon as possible, for an emergency SLA Board meeting.

27. Where the charges of the Notice of Pleading are not sustained, or are sustained and the SLA board assesses a penalty other than continued suspension, cancellation or revocation, the Suspension Order is reversed and the license is returned. If the charges are sustained and the discipline is cancellation or revocation, the Suspension Order is replaced with a cancellation or revocation order.

28. It is also the SLA Board's practice to allow parties to request reconsideration of summary suspensions. A licensee can bring evidence showing that the suspension was in error directly to the SLA Board for consideration without going through the hearing process.

29. For example, on Saturday, August 8, 2020, the day after Plaintiff's license was suspended, the SLA Board issued a Suspension Order for the Gansevoort Hotel in Manhattan. That suspension was similarly based on a violation of EO 202.3, for serving patrons inside in New York City. The SLA Board had a report and a picture from an investigator, taken from the street, that appeared to show patrons eating inside the restaurant of the Hotel next to open windows.

30. On August 10, 2020, the Gansevoort Hotel's attorney requested reconsideration of the Suspension Order, and provided the SLA with photographic evidence depicting the location in which the service of patrons was observed from multiple angles, revealing that the structure was actually open on three sides. The SLA Board lifted the Suspension Order the next day.

31. The Ganesvoort Hotel's suspension took place the day after Plaintiffs' suspension. That suspension was reversed within three days and has been open and serving alcohol for two weeks.

32. It is my understanding that one of Plaintiffs' representatives was provided with contact information for the SLA counsel handling this matter on August 8, 2020, but never contacted her or anyone else at the SLA.

33. Had they done so, just as with the Ganesvoort Hotel, new evidence could have been submitted to the SLA Board for reconsideration.

## THE CLOISTER EAST, INC.

34. On August 7, 2020, an SLA investigator Stravalle inspected the licensee ("Cloister") and found numerous violations of the Governor's Executive Order 202.43 including allowing indoor consumption of food or beverages by over 20 people, allowing at least 10 people to congregate in front of the premises, standing shoulder to shoulder while waiting on line to enter, not exercising social distancing, with a DJ, music, hookah and dancing. The Investigation Report prepared by Stravalle is attached hereto as **Exhibit 1**.

35. The New York Sheriff's Office issued seven criminal summonses to Plaintiff concerning its conduct, which are also included. The Sheriff's Report is attached hereto as **Exhibit 2**.

36. That same day, the SLA Board was presented evidence of these violations in the form of the Investigation Report, the Sheriff's Report, as well as Investigator Stravalle's Checklist of Violations, which is attached hereto as **Exhibit 3**, additional photographs of Cloister East, which are

attached hereto as **Exhibit 4**. The SLA Board was also presented an August 4, 2020 Article from Gothamist.com, which is attached as **Exhibit 5,** which it declined to consider.

37. This evidence included photos depicting a crowd of people in a rear area of the premises. That picture plainly depicts a space in which service was occurring with three walls and a closed, cloth roof. From my review of this picture alone, there is no question that under long-standing DOH Guidance, this is not an "open-air space designated for the consumption of food and/or beverage, which may have a temporary or fixed cover (e.g. awning or roof) so long as such cover has at least two open sides for airflow." This was a violation of EO 202.3.

38. In addition, the reports and pictures reflect persons congregating immediately in front of the licensed premises, with no social distancing, as patrons were waiting on line to get inside, a violation of EO 202.43.

39. A number of additional fire and health safety violations were also observed.

40. This incident occurred in the early morning hours on August 7, 2020. Prior to that day, from July 12, 2020 to August 5, 2020, the New York Police Department had received thirty-five 311 calls about the Plaintiff's establishment complaining about loud music, people partying inside, and crowds congregating with no social distancing. Copies of 311 calls annexed hereto as **Exhibit 6**.

41. In light of the evidence of numerous, flagrant violations of multiple EO's, in addition to other safety violations, the SLA Board voted during an emergency meeting held on August 7, 2020, to summarily suspend Cloister's liquor license pursuant to SAPA.

42. A copy of The Emergency Order of Summary Suspension (the "Suspension Order"), is attached hereto as **Exhibit 7**.

43. I am informed that on August 7, 2020, an investigator for the Authority notified Nicholas Drobenko of the Emergency Order of Summary Suspension in person at the Plaintiff's

licensed establishment, posted the Order on the front door as public notice of the suspension, secured the liquor license certificate and notified the NYPD 9th precinct.

44. The charges for the violations of law at issue in this case were not included with the Suspension Order, which was ordered at a meeting that began at 3 p.m. on Friday afternoon. The Notice of Pleading was served on the next business day, Monday August 10, 2020, pursuant to the Rules of the State Liquor Authority: mailed to the Plaintiff at the Plaintiff's business address by both regular first class mail (as landlord) and by certified mail return receipt requested (as licensee), and by regular first class mail to the residence address of the licensee's corporate President. A copy of is annexed hereto as **Exhibit 8**.

45. I note from my review of the Notice of Pleading that, while it includes 18 separate charges, the pleading fails to include a charge for violation of EO 202.3 for the inside dining. The Suspension Order makes clear that the suspension was based in part on that violation. The failure to include that charge in the pleading appears to be an oversight that would have been corrected as soon as it was discovered.

46. Plaintiff has not yet filed its plea to the charges and has until September 2, 2020, to file it with the Authority.

47. As can be seen from Exhibit 6 to the Declaration of Nick Drobenko, the notice of pleading contains additional pages that advise, *inter alia*, that the licensee may file a not guilty plea and then a hearing will be scheduled.

48. Plaintiff has not filed a not guilty plea, has not contacted the attorney assigned by the Authority to prosecute the case (despite, as I understand it, having contact information the day after the suspension went into effect), has not otherwise requested to see the documentary evidence that the Authority has in support of the charges, has not requested an administrative hearing, and has not asked the Board to reconsider the suspension for any reason.

49.    If Plaintiff requests a hearing, it will be scheduled promptly.

### The Cloister East License

50.    The holder of the license at issue in this case is "The Cloister East, Inc."

51.    Jaroslaw Drobenko, John Drobenko, Nicholas Drobenko, and Walter Drobenko are listed as corporate principals of The Cloister East, Inc. in connection the liquor license.

52.    A copy of a report from the New York Secretary of State indicating that The Cloister East, Inc., was dissolved as a corporation on September 29, 1993 is attached hereto as **Exhibit 9**. Upon information and belief, as of October 24, 2019, the Plaintiff owes the State of New York $141,804.44 in delinquent taxes. A copy of the Tax Warrant annexed hereto as **Exhibit 10**.

53.    The Cloister East, Inc. was obligated under NYS Alcoholic Beverage Control Law § 110 (4) and (5) to notify the Authority of any change in fact required to be set forth in their license application.

54.    They failed to do so. A copy of its most recent renewal application is annexed hereto as **Exhibit 11**.

55.    Each time the Plaintiff renewed its license (every two years), they certified that all the information previously provided was correct and that there were no changes to report.

56.    A false material statement or concealment of facts in connection with an application or for the renewal thereof constitutes grounds for revocation, cancellation or suspension of the license. 9 NYCRR § 53.1 (b).

Dated: August 24, 2020
       New York, New York

_____
MARK FRERING