UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
THE CLOISTER EAST, INC., etc., et al.,

                Plaintiffs,

       -against-                            20-cv-6545 (LAK)

NEW YORK STATE LIQUOR AUTHORITY, et al.,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OPINION


        Appearances:

                  Robert Garson
                  GARSON, SEGAL, STEINMETZ, FLADGATE LLP
                  *Attorneys for Plaintiffs*

                  Alice Goldenberg
                  Katherine Rhodes Janofsky
                  Assistant Attorneys General
                  LETITA JAMES
                  ATTORNEY GENERAL OF THE STATE OF NEW YORK
                  *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

        This case involves an effort by the New York State Liquor Authority (the "SLA") to enforce COVID-19 guidelines promulgated by the New York Department of Heath (the "DOH") during the depths of the pandemic. Plaintiffs — The Cloister East, Inc. ("Cloister"), which at relevant times operated a restaurant known as Cloister Café and held an on-premises liquor license, and its owners — now claim that the SLA (1) in 2020 improperly suspended Cloister's liquor license

after an article published on the *Gothamist.com* reported that Cloister Café was hosting illegal "pandemic parties" and (2) later that year improperly revoked that license. They seek damages and declaratory relief pursuant to 42 U.S.C. § 1983 based on alleged violations of their due process rights.[1] Now before the Court is defendants' motion to dismiss the Second Amended Complaint ("SAC").[2]

### Facts and Procedural History[3]

In August 2020, after the *Gothamist.com* published an online article claiming that Cloister Café was hosting "illegal, illicit pandemic parties,"[4] the SLA issued an emergency order suspending Cloister's liquor license (the "Suspension Order") pursuant to an investigation and board meeting that plaintiffs allege were filled with inaccuracies and misrepresentations. Cloister then filed this action against the SLA and sought principally an injunction reversing the license suspension.

This Court denied Cloister's motion for a preliminary injunction, principally on the ground that an adequate post-deprivation hearing would be available in the form of an Article 78

---

[1]    Dkt 102 ("SAC") ¶¶ 120-38.

[2]    Dkt 105 (Def. Mot.).

[3]    The Court assumes familiarity with the underlying facts and the procedural history and thus provides the minimal background necessary to decide the motion. For a more complete accounting of the case background, *see Cloister E., Inc. v. N.Y. State Liquor Auth.*, 563 F. Supp. 3d 90, 96-102 (S.D.N.Y. 2021).

[4]    SAC ¶ 36.

proceeding in state court.[5]  Plaintiffs then commenced an Article 78 proceeding in state court and

initially obtained a temporary restraining order vacating the Suspension Order.[6]  But the SLA then

rescinded the Suspension Order, thus mooting Cloister's Article 78 proceeding.[7]  The SLA, however,

then went on to hold an administrative hearing on its petition to revoke or cancel Cloister's license.[8]

The administrative law judge sustained 16 of the SLA's charges against Cloister, following which

the SLA canceled its liquor license.[9]

　　　　　Cloister then commenced a second Article 78 proceeding, this one challenging the

SLA's cancellation of the license.[10]  The New York Supreme Court, however, dismissed the petition

on the ground that Cloister lacked legal capacity to sue because it had been administratively

dissolved in 1993 under Section 203-a of the New York Tax Law for failing to pay certain taxes.[11]

The Appellate Division affirmed the dismissal on November 3, 2022, applying the same rationale.[12]

Cloister did not seek review in the state system of the Appellate Division decision.

---

[5]

　　　*Cloister E.*, 563 F. Supp. 3d at 101.

[6]

　　　SAC ¶ 114.

[7]

　　　*Id.* ¶ 115.

[8]

　　　*Id.*

[9]

　　　*Id.* ¶ 117.

[10]

　　　*Id.* ¶ 118.

[11]

　　　*Id.* ¶ 119.

[12]

　　　*Id.*; *see also Cloister E., Inc. v. N.Y. State Liquor Auth.*, 210 A.D.3d 453, 175 N.Y.S.3d 898
(N.Y. App. Div., 1st Dep't 2022).

In December 2022, plaintiffs[13] filed the SAC, which asserts claims against the three SLA members, the SLA's general counsel, and an associate counsel of the SLA. It contains only two claims for relief. The first, against all defendants, asserts a procedural due process claim based on the assertion that the Suspension Order deprived Cloister (and presumably its landlord and the Drobenko brothers, none of whom is said to have held a liquor license) of notice or a hearing before that order was entered.[14] The second is brought only against SLA chairman Bradley, who allegedly was biased against Cloister and thus rendered the cancellation of Cloister's license invalid under the due process clause.[15]

Defendants now move to dismiss the SAC. They argue principally that plaintiffs lack standing to sue because Cloister, the licensee, had been administratively dissolved in 1993, thus did not legally exist at the time it commenced this litigation, and therefore could not have sustained any injury in fact.[16] In the alternative, they contend that the claims against the Individual Defendants must fail for lack of personal involvement and, in any case, on the basis of qualified immunity, among other reasons.[17] For the reasons discussed below, defendants' motion is granted.

---

[13]

Cloister; Drobenko Bros. Realty, Inc., its landlord; and four Messrs. Drobenko who allegedly own Drobenko Bros. Realty.

[14]

SAC ¶¶ 120-27.

[15]

*Id*. ¶¶ 128-38.

[16]

Dkt 106 (Def. Mem.) at 16-22.

[17]

*Id*. at 22-35.

The defendants argue also that the action must be dismissed as against the SLA on the ground of sovereign immunity. While the SAC continues to name the SLA as a defendant

### *Discussion*

*Standing*

Article III of the U.S. Constitution limits federal court jurisdiction only to "cases" and "controversies."[18] "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue" — that is, that they are "the proper party to bring [the] suit."[19] "To have standing, a plaintiff must 'present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling.'"[20] And it long has been said, albeit as a very broad generalization, that jurisdiction must be established as a threshold matter before a court proceeds to the merits.[21] Were that generalization to be applied uncritically here, it would involve this Court in

---

in its listing of the parties, SAC ¶ 7, neither of the two claims in the SAC identifies the SLA as a defendant against which the claim is brought, despite doing so for other defendants, *id.* ¶¶ 120-38. For this reason alone, the SAC is dismissed as to the SLA. In any event, the SLA's sovereign immunity under the Eleventh Amendment would bar suit against it, *Cloister E.*, 563 F. Supp. 3d at 102-05, which plaintiffs do not appear to contest, *see* Dkt 110 (Pl. Opp.) at 23.

Finally, plaintiffs conceded in their motion for leave to file the SAC that they would "not proceed[] against [defendants] Stravalle and Donohue," nor does the SAC assert any claims against them. *See* Dkt 84 at 2; SAC ¶¶ 120-38. Accordingly, defendants Stravalle and Donohue are dismissed from the case as well.

[18]

U.S. Const. art. III, § 2, cl. 1; *see W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008).

[19]

*Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

[20]

*Dep't of Com. v. New York*, 588 U.S. 752, 766 (2019) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008)).

[21]

*See., e.g., Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583-85 (1999).

6

a number of unsettled and difficult questions of New York law, questions far more difficult that the legal sufficiency of the merits of plaintiffs' claims and far more appropriately decided by state courts.

The Court notes at the outset that the consequences of Cloister's administrative dissolution in 1993 — though said by defendants and in *dicta* in some state court decisions to include the cessation of its existence — are far from clear. To be sure, if the appropriate administrative tasks take place, a New York corporation that fails to pay certain taxes is "*deemed* dissolved without further legal proceedings."[22] But being so deemed is not the same as cessation of existence. For N.Y. Business Corporation Law Section 1005 provides in part that:

> "After dissolution:
>
> "(1) The corporation shall carry on no business except for the purpose of winding up its affairs.
>
> "(2) The corporation shall proceed to wind up its affairs, with power to fulfill or discharge its contracts, collect its assets, sell its assets for cash at public or private sale, discharge or pay its liabilities, and do all other acts appropriate to liquidate its business."

And Section 1006 provides in relevant part that:

> "A dissolved corporation, its directors, officers and shareholders may continue to function for the purpose of winding up the affairs of the corporation in the same manner as if the dissolution had not taken place, except as otherwise provided in this chapter or by court order. In particular, and without limiting the generality of the foregoing:
>
> *   *   *
>
> "(4) The corporation may sue or be sued in all courts and participate in actions and proceedings, whether judicial, administrative, arbitrative or otherwise, in its corporate name, and process may be served by or upon it."

---

[22] N.Y. Tax L. § 203-a, subd. 4 (emphasis added).

Thus, a dissolved corporation, after dissolution, may carry on its business to the extent needed to wind up its affairs, fulfill its contracts, collect and distribute its assets (by suing or defending actions to do so), and so on — all activities inconsistent with the cessation of its existence.[23]  Indeed, it is not at all difficult to envision circumstances in which a dissolved corporation could be injured in fact by the actions of a tortfeasor and thus have the ability to sue the tortfeasor for damages.[24]

And suppose a dissolved corporation — whether in ignorance or in disregard of its administrative dissolution pursuant to the Tax Law — fails to wind up its affairs and simply continues in business as if it had not been "dissolved," as appears to have occurred here.  Does New York law leave it without any remedy no matter the occurrence of whatever occasions the desire for a remedy?

And what of the fact that the SLA, itself an agency of the State, renewed Cloister's liquor license regularly for nearly thirty years after — if the SLA's argument were accepted — Cloister had ceased to exist?  Should that mean that the SLA could revoke that license, even for reasons — hypothetically — flatly prohibited by the Constitution and federal law, and yet insist that the licensee the license of which it regularly renewed did not "exist," thus leaving the former licensee with no remedy in a court of law?

---

[23]   *E.g., MMI Trading, Inc. v. Nathan H. Kelman, Inc*., 120 A.D.3d 478, 479-80, 989 N.Y.S.2d 911, 912-13 (N.Y. App. Div., 2d Dep't 2014); *Pirraglia v. Jofsen, Inc*., 171 A.D.3d 521, 522-23, 98 N.Y.S.3d 156, 157 (N.Y. App. Div., 1st Dep't 2019).

[24]   Take for example a dissolved corporation that owns a commercial building that is destroyed by fire or other peril.  There can be no serious doubt that its collection of its assets, as specifically authorized by N.Y. Bus. Corp. L. § 1005, could involve suit against any responsible third party or insurer.  Surely it would have suffered injury in fact by virtue of the loss and would "exist" for the purposes of obtaining compensation.

8

Indeed, in explicit contrast to defendants' position, many New York courts have recognized the continuing existence of a dissolved corporation or one lacking in formal status, particularly where, as here, it was treated as a corporation by others. As the Second Circuit has summarized:

> "It is well established in New York that a company lacking formal corporate status but nonetheless operating as a corporation may be considered a *de facto* corporation and those who treat the entity as a corporation in regular business dealings may not later deny its corporate status. *Cf. Judarl LLC v. Cycletech Inc.*, 246 A.D.2d 736, 667 N.Y.S.2d 451, 452 (3d Dep't 1998) (parties dealing with a *de facto* corporation are estopped from avoiding their obligations to it). Moreover, we see convincing signs in New York case law that a company dissolved for failure to pay franchise taxes can be considered a *de facto* corporation. *See, e.g., Ludlum Corp. Pension Plan Trust v. Matty's Superservice, Inc.*, 156 A.D.2d 339, 548 N.Y.S.2d 292, 293 (2d Dep't 1989); *National Bank v. Paskow*, 75 A.D.2d 568, 427 N.Y.S.2d 262, 264 (1st Dep't 1980). There are some Appellate Division cases that hold that a corporation dissolved for failure to pay taxes has no *de facto* existence. *See De George v. Yusko*, 169 A.D.2d 865, 564 N.Y.S.2d 597, 598 (3d Dep't 1991); *Lorisa Capital Corp. v. Gallo*, 119 A.D.2d 99, 506 N.Y.S.2d 62, 71 (2d Dep't 1986). However, even those cases recognize that where the corporation later pays its taxes and is reinstated, its corporate status is restored *nunc pro tunc*, and any contracts into which it may have entered are retroactively validated. *See De George*, 564 N.Y.S.2d at 598; *Lorisa*, 506 N.Y.S.2d at 72."[25]

Thus, plaintiffs' standing to sue depends on several serious questions of New York law, including but not limited to whether Cloister's thirty years of uninterrupted license renewals by the SLA and its decades of continued business entitle it to *de facto* corporation status, whether its current suit properly could be construed as "for the purpose of winding up its affairs" by trying to recover its liquor license, a valuable asset, and whether the SLA is estopped from arguing that Cloister has no legal existence given its repeated renewal of that license. And these questions are made more difficult by the fact that the parties have not addressed them in any serious way in their

---

[25] *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 87 (2d Cir. 1999).

briefing.

Fortunately, the Court need not resolve these challenging issues of New York law in order to dispose of this case.  The general assumption that jurisdiction should be decided first is not without very significant exceptions.  According to the Second Circuit:

> "'The bar on hypothetical jurisdiction,' we have held, 'applies only to questions of Article III jurisdiction.' *Moore v. Consol. Edison Co. of N.Y., Inc.,* 409 F.3d 506, 511 n.5 (2d Cir. 2005). So 'where the potential lack of jurisdiction is a constitutional question,' we decide the question. *Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine,* 311 F.3d 488, 497 (2d Cir. 2002) (quotation marks omitted). By contrast, we may assume hypothetical jurisdiction where the jurisdictional issue is statutory in nature. *See Doyle v. U.S. Dep't of Homeland Sec.,* 959 F.3d 72, 79 (2d Cir. 2020); *Vera v. Banco Bilbao Vizcaya Argentaria, S.A.,* 946 F.3d 120, 137 n.22 (2d Cir. 2019); *Ahmed v. Holder,* 624 F.3d 150, 154–55 (2d Cir. 2010); *Abimbola v. Ashcroft,* 378 F.3d 173, 180 (2d Cir. 2004); *United States v. Miller,* 263 F.3d 1, 4 n.2 (2d Cir. 2001). If, as here, 'the jurisdictional constraints are imposed by statute, not the Constitution,' we have found it particularly prudent to assume hypothetical jurisdiction 'where the jurisdictional issues are complex and the substance of the claim is . . . plainly without merit.' *Ivanishvili v. U.S. Dep't of Justice,* 433 F.3d 332, 338 n.2 (2d Cir. 2006)."[26]

The Court recognizes the distinction drawn in *Butcher* between exercising hypothetical jurisdiction over statutory issues, which is permissible, and exercising hypothetical jurisdiction over constitutional ones, which is not.[27]  But drawing a clear line in the law between the two is not so straightforward.  While questions of plaintiffs' Article III standing are constitutional in nature,[28] here, the embedded "jurisdictional constraints *are imposed by statute*, not the

---

[26]

*Butcher v. Wendt,* 975 F.3d 236, 242-43 (2d Cir. 2020) (footnotes omitted).

[27]

*See also Fama v. Comm'r of Corr. Servs*., 235 F.3d 804, 816 n.11 (2d Cir. 2000).

[28]

*Lujan* , 504 U.S. at 560 ("Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. . . ."); *Davis*, 554 U.S. at 733 ("[T]he requirement that a claimant have 'standing is an essential and unchanging part of the case-or-controversy requirement of Article III.'") (quoting *Lujan*).

Constitution"[29] — the meaning and consequences of New York Tax Law Section 203-a and New York Business Corporation Law Sections 1005-06 — as well as by the common law of New York. Moreover, exercising hypothetical jurisdiction is "particularly appropriate" where, as here, "the jurisdictional issue[s] [are] both novel and arguably complex, while [plaintiffs'] claims are plainly meritless."[30]  "It would be ironic if, in our desire to avoid rendering an advisory opinion, we were to address [instead] a novel standing question in a case where the result is foreordained" on the merits.[31]

The Court has found no cases in the Second Circuit directly dealing with the exercise of hypothetical jurisdiction over statutory issues embedded within a constitutional standing dispute.[32] Nonetheless: (1) the jurisdictional questions fundamentally depend on resolution of questions of

---

[29]

    *Ivanishvili v. U.S. Dep't of Justice,* 433 F.3d 332, 338 n.2 (2d Cir. 2006) (emphasis added); *see also Marquez-Almanzar v. I.N.S.*, 418 F.3d 210, 216 n.7 (2d Cir. 2005) ("The jurisdictional prerequisites to our consideration of the merits in this case are imposed by statute, not the Constitution, and thus are not a bar to our assumption of 'hypothetical jurisdiction'").

[30]

    *Butcher,* 975 F.3d at 244.

[31]

    *Ctr. for Reprod. L. & Pol'y v. Bush*, 304 F.3d 183, 195 (2d Cir. 2002); *see also Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 137 n.22 (2d Cir. 2019).

    Indeed, in the plurality Supreme Court decision attempting to limit the use of hypothetical jurisdiction, Justice O'Connor's concurrence explicitly cautioned that "the Court's opinion should not be read as cataloging an exhaustive list of circumstances under which federal courts may exercise judgment in reserving difficult questions of jurisdiction when the case alternatively could be resolved on the merits in favor of the same party." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 110-111 (1998) (cleaned up).  The present case appears to be one of those circumstances.

[32]

    However, the Second Circuit has exercised hypothetical jurisdiction over a constitutional standing dispute previously, even without an underlying statutory question to decide.  *See Ctr. for Reprod. L. & Pol'y*, 304 F.3d at 195.

New York statutory and common law, (2) those questions largely have not been addressed by the parties, and (3) they are complex and unanswered by New York courts, while plaintiffs' claims are "plainly without merit."[33]    Accordingly, I assume the existence of subject matter jurisdiction and rule on the merits.

*The Merits*

Claim One of the SAC alleges that the named defendants (Fan, Bradley, Ford, Meyerhoff, and Marsico) violated plaintiffs' procedural due process rights by entering the Suspension Order of Cloister's liquor license without providing notice or an opportunity to be heard.[34]   More specifically, it contends that the order suspending Cloister's liquor license left it "unable to operate as a business" and, as a consequence, the other plaintiffs (the Drobenko brothers and their real estate company, Cloister's landlord) "were unable to pursue their livelihoods."[35]

Claim One is dismissed as against defendants Meyerhoff and Marsico for the same reasons stated in the Court's prior decision — notably, because the SAC again fails to allege sufficient facts showing that they were "personally involved" in the suspension decision and that they "had the power to provide [plaintiffs] with the process sought."[36]  Plaintiffs' addition in the SAC of an unsupported statement to the contrary is conclusory and implausible.  As alleged, the SAC now

---

[33]     *Marquez-Almanzar*, 418 F.3d at 216 n.7.

[34]     SAC ¶¶ 120-27.

[35]     *Id.* ¶ 125.

[36]     *Cloister E.*, 563 F. Supp. 3d at 106.

asserts summarily that Meyerhoff and Marsico "participated in, and encouraged, the making of the decision not to provide the Plaintiff [sic] with notice and due process and ability to appear at the Board Meeting on Suspension."[37]  Yet it continues to allege no facts, as distinguished from conclusory statements, supporting Meyerhoff's and Marsico's supposed participation in the actual suspension decision.  Nor does the Suspension Order, which was made only by the members of the SLA authorized to suspend the license, itself state that Meyerhoff or Marsico had any such role.[38]  In any event, there are no allegations that Meyerhoff or Marsico had the "power to provide process to the plaintiff[s]" in the first place.[39]

Similarly, Claim One is dismissed as against SLA members Bradley, Fan, and Ford for the same reasons stated in the Court's prior decision.  As public officials, "it was objectively reasonable for them to believe that an emergency existed under the circumstances alleged by plaintiffs."[40]  Thus, they were entitled to qualified immunity, as the SAC adds no new allegations "that the SLA Board knew or should have known that the information provided [to them] by Marsico and Meyerhoff was incorrect," as was required.[41]

---

[37]

SAC ¶ 123.

[38]

*See* Dkt 30-7 at 5.  The Court properly may take judicial notice of the Suspension Order, as it is incorporated into the SAC by reference and, in any event, integral to its allegations.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

[39]

*Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005).

[40]

*Cloister E.*, 563 F. Supp. 3d at 108-09 (cleaned up).

[41]

*Id*. at 109.

Claim Two of the SAC alleges that defendant Bradley violated plaintiffs' procedural due process rights by exhibiting bias in favor of permanently revoking Cloister's liquor license "[p]rior to any administrative hearing and having heard no evidence."[42]  Plaintiffs assert that "Bradley's bias required his recusal from the [SLA] Board's decision-making process."[43]

Claim Two is dismissed for two independent reasons.  First, the allegations in the SAC are insufficient to state a claim of bias.  Bradley's alleged statement that he "would recommend that [Cloister] don't get a license back,"[44] plaintiffs contend, amounted to a "personal bias" that "tainted the [SLA] Board and the [revocation] process as a whole."[45]  However, "[t]he fact that the decisionmaker may have expressed a belief publicly—after an investigation but prior to a hearing—that the plaintiff acted unlawfully does not establish bias."[46]  As the Supreme Court has explained, "[n]o decision of this Court would require us to hold that it would be a violation of procedural due process for a judge to sit in a case after he ha[s] expressed an opinion as to whether

---

[42]

SAC ¶ 130.

[43]

*Id*. ¶ 131.

[44]

New York State Liquor Authority, *08/07/20 Special Full Board Meeting*, YouTube (Aug. 7, 2020), https://www.youtube.com/watch?v=QCmKppthT5E, at 48:41-48:46.  The Court may properly take judicial notice of the Board Meeting as well.  *See supra* note 38.

[45]

SAC ¶ 112.

[46]

*B.A.M. Brokerage Corp. v. N.Y.*, 718 F. Supp. 1195, 1202 (S.D.N.Y. 1989) (citing *Withrow v. Larkin*, 421 U.S. 35, 48 (1975)); *see also Rutigliano Paper Stock, Inc. v. U.S. Gen. Servs. Admin.*, 967 F. Supp. 757, 770 (E.D.N.Y. 1997) ("The fact that the suspending official may have formed an opinion as a result of the initial investigation is not a cause for bias.").

certain types of conduct were prohibited by law."[47]  Thus, by analogy, it is not "a denial of due process" for public officials "to act in [administrative] proceedings after having expressed the view that [the conduct at issue] was illegal."[48]  Accordingly, the SAC fails to allege sufficient facts tending to show bias.[49]

Second, the Article 78 proceeding in New York state court "provide[d] an adequate post-deprivation review of the SLA's decision to cancel Cloister Café's liquor license,"[50] despite the fact that the court dismissed the proceedings due to plaintiffs' lack of capacity to bring suit.[51] Contrary to the SAC, an Article 78 proceeding constitutes an adequate post-deprivation remedy *even if* procedural defects in plaintiffs' claims require dismissal of the case without addressing the merits.[52]  And capacity to sue is "a procedural issue dealing with the personal qualifications of a

---

[47]

*Withrow*, 421 U.S. at 48-49 (quoting *Fed. Trade Comm'n v. Cement Inst*., 333 U.S. 683, 702-03 (1948)).

[48]

*Cement Inst*., 333 U.S. at 702; *see also B.A.M. Brokerage*, 718 F. Supp. at 1201 (finding no bias where public officials previously had described licensees "as 'crooks' who deserved to lose their licenses" and who should be punished by "firing squad.").

[49]

*Accord Bridgeforth v. Popovics*, No. 09-cv-0545, 2011 WL 2133661, at *9 (N.D.N.Y. May 25, 2011) (dismissing complaint on similar grounds); *see also Withrow*, 421 U.S. at 47 (actual bias arises in situations "in which the adjudicator has a pecuniary interest in the outcome" or "in which he has been the target of personal abuse or criticism from the party before him.").

[50]

*Cloister E*., 563 F. Supp. 3d at 110.

[51]

*Cloister E.*, 210 A.D.3d at 453.

[52]

*See* Dkt 106 (Def. Mem.) at 34 and n.21 (collecting cases).

15

party to litigate."[53] Thus, plaintiffs were not denied due process merely because the New York courts declined to grant Article 78 relief on the grounds of Cloister's dissolution rather than on plaintiffs' preferred issues.  Claim Two must be dismissed for this independent reason as well.

*Conclusion*

For the foregoing reasons, the defendants' motion to dismiss (Dkt 105) is GRANTED.  The Clerk shall terminate any pending motions and close the case.[54]

SO ORDERED.

Dated:        October 8, 2024

_____
Lewis A. Kaplan
United States District Judge

---

[53] *Horowitz v. 148 S. Emerson Assocs. LLC*, 888 F.3d 13, 19 n.4 (2d Cir. 2018) (quoting Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1559 (3d ed. 2017)); *see also Emery Mukendi Wafwana & Assocs., P.C. v. Mengara*, No. 20-cv-9788, 2022 WL 2392510, at *8 (S.D.N.Y. May 19, 2022), *report and rec. adopted*, 2022 WL 2392498 (S.D.N.Y. June 30, 2022).

[54] The Court has excluded matters outside the SAC except that it has taken judicial notice of the state court proceedings to the extent necessary.  Accordingly, defendants' motion has not been converted into one for summary judgment. *See* Fed. R. Civ. P. 12(d).